No. 24,194.

THE STATE OF KANSAS, *Appellee,* v. DEWEY FREY, *Appellant.*

SYLLABUS BY THE COURT.

1. LARCENY—*Theft of Harness—Clerical Error in Descriptive Words in Information—Not Prejudicial.* In a prosecution for grand larceny for the theft of a set of harness belonging to a farmer, a clerical error in the legal description of the owner's farm according to the United States survey, is immaterial. Such error may be disregarded as surplusage, or corrected by amendment during the trial as mere matter of form under section 72 of the criminal code; and where there is no showing that defendant was misled or prejudiced thereby, no trial error can be based thereon.

2. SAME—*Evidence—Genuineness of Signature.* The rule of the criminal code, section 216, which provides that the testimony of three expert witnesses is

requisite to prove the genuineness of a note, bill, draft, certificate of deposit or other similar writing is limited to crimes wherein the genuineness of the note or writing is itself the subject of the crime and a vital question involved therein; and has no application to crimes in which such·note or writing is not primarily involved, and where it is a mere item of evidence tending· to establish a crime which has no relation to such note or writing.

3. SAME—*Evidence Supports Verdict and Judgment.* The evidence examined and held sufficient to identify the stolen harness and to justify the verdict and judgment.

4. SAME—*Immaterial Remarks of Trial Judge.* On appeal, it is of no consequence that before the jury rendered its verdict the trial court expressed serious doubt as to the sufficiency of the evidence to establish the defendant's guilt; although if such doubt had persisted in the trial court's mind after the verdict was rendered it would have been its duty to set the verdict aside and grant a new trial.

Appeal from Norton district court; WILLARD SIMMONS, judge. Opinion filed July 8, 1922. Affirmed.

*H. T. Santrock, W. E. Mahin,* both of Norton, and *F. W. Mahin,* of Smith Center, for the appellant.

*A. L. Drummond,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Dewey Frey was convicted of feloniously stealing a set of harness from Rennie McCormick, a farmer residing about six miles north of Norton.

The harness was taken from McCormick's barn on the night of March 9 or during the early hours of March 10, 1921. The wheel tracks of an automobile such as defendant then possessed were seen in the public road nearby; marks as of harness which had been dragged under the fence were discovered; and after daylight Frey and his car were found stalled on the highway about seven miles south of Norton. In the car was some harness partly covered with a blanket. McCormick's harness was a set which had cost $175 about fourteen months before, but it had not been greatly used, and still had a new appearance. Several witnesses testified that the harness partly covered in Frey's car looked like new. On the same night as this theft, another harness belonging to a farmer named Lockwood, living near McCormick, was likewise stolen, and before Frey was apprehended for the theft of the McCormick harness he had been arrested for the larceny of the Lockwood harness. Following this first arrest he wrote a rambling letter to the editor of a Norton newspaper in which he told a preposterous story to the

effect that while driving from Oxford, Neb., on the night of these larcenies he halted on the road about six miles north of Norton and was importuned by two fellows to haul two sets of harness, one of which was new, to some place between Lenora and Morland, (thirty to fifty miles southwest), and that they offered him $150 for that service, and that he hauled one of these fellows and the harness to a draw south of Lenora and was paid $145 therefor, and that he had promised not to tell who these persons were.

Verdict of conviction, and judgment and sentence to the penitentiary followed; and defendant appeals.

The first error urged on our attention relates to the amendment to the information which the court permitted during the trial. The information had first given the legal numbers of McCormick's farm as section 24, town 1, range 21 west, in Norton county. The amendment changed the range number to 23. The legal numbers of the McCormick farm were immaterial and surplusage; they hardly amounted even to matter of form. At the preliminary examination the state's evidence was developed and defendant was fully apprised of the offense charged against him. So, too, by the information. It charged him with the felonious theft of a set of harness belonging to R. E. McCormick in Norton county. Since the action was not for burglary, it was unnecessary to charge that the harness was taken from McCormick's barn. Furthermore, no request was made for a postponement on account of the amendment, nor was any showing of prejudice made at the trial nor on the hearing of the motion for a new trial. The allowance of the amendment was therefore not erroneous. (Crim. Code, § 72; *The State v. Sterns*, 28 Kan. 154; *The State v. Spendlove*, 47 Kan. 160, 28 Pac. 894; *The State v. McDonald*, 57 Kan. 537, 46 Pac. 966; *The State v. McCullough*, 101 Kan. 52, 165 Pac. 644; 22 Cyc. 437, 443, 444.)

The next error urged relates to the admission in evidence of the letter written by defendant to the newspaper editor, in which he said that he had been in the vicinity of McCormick's farm on the night of the larceny and that he had hauled away a new harness therefrom. Three objections are urged to this—that the defendant's signature was not fully identified, that the letter itself was not identified, and that it should have been excluded because it involved him in another crime than the one for which he was on trial. None of these objections are tenable. Defendant's signature to the letter

was sufficiently identified by the banker with whom he had done business. (*Baird v. Shaffer*, 101 Kan. 585, 590, 168 Pac. 836.)

The letter to which defendant's identified signature was appended was itself identified by the recipient; and since it contained admissions of material importance to a correct determination of the cause on trial, the fact that it likewise contained matters relevant to another crime did not require its exclusion. (*The State v. King*, 111 Kan. 140, syl. ¶ 1, 206 Pac. 883.) Defendant's counsel cite section 216 of the criminal code, which provides that the testimony of *three* expert witnesses is requisite to prove the genuineness of a note, bill, draft, certificate of deposit or other writing. That rule applies where the note or writing is itself the subject of the crime and where its authenticity is consequently of vital importance, and where there is no evidence concerning the crime involved in the writing except the testimony of experts, as in the case of forgery, for example. It does not apply where the writing is a mere bit of evidence touching a crime which has nothing to do with the writing, as in this case, where the subject of the crime was the theft of a set of harness. (*The State v. Foster*, 30 Kan. 365, 2 Pac. 628.) Here, too, there was other evidence, the tracks of defendant's automobile near McCormick's, the marks on the ground near by where the harness had been dragged under the fence, and the presence of the harness in defendant's automobile after daylight next morning.

Another contention is that the harness in defendant's possession was not sufficiently identified as that which was stolen from McCormick. To support this some diversity in the testimony of the state's witnesses is quoted, some testifying that it looked like brand new, while in fact the harness had been used for some months on a span of colts and had sweat marks and had been rained on. That contention is only a jury argument; and moreover, that overlooks also the other evidence which tended to identify the harness in defendant's possession as that of McCormick—the theft of the harness, the marks on the ground, the presence of Frey's car in the neighborhood, the absurd explanation of how defendant got the harness and how he disposed of the harness. These were potent bits of evidence on the question of identification.

Elsewhere it is argued that the trial court expressed dissatisfaction with the evidence touching the automobile tracks, saying: "The testimony regarding the automobile tracks is vague, indefinite, un-

certain and contradictory." But this remark was in connection with its ruling on the motion to take the case from the jury. It is generally immaterial what reason a trial court gives for its ruling, so long as the ruling itself is correct. (*Saylor v. Crooker,* 97 Kan. 624, syl. ¶ 4, 156 Pac. 737.) Of course, after a verdict is rendered in a criminal case, if the trial court is dissatisfied with it, it is its imperative judicial duty to set it aside and grant a new trial. (*K. C. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1, 30 Pac. 108; *Coal and Mining Co. v. Stoop,* 56 Kan. 426, 43 Pac. 766; *Richolson v. Freeman,* 56 Kan. 463, 43 Pac. 772; *Hudson v. Riley,* 104 Kan. 534, syl. ¶ 4, 180 Pac. 534.)

In *Butler v. Milner,* 101 Kan. 264, 166 Pac. 478, Mr. Justice Porter, speaking for this court in pointed language which should address itself weightily to the consciences of all trial judges, said:

"The sole function of the jury is to return a verdict, but the matter does not rest there; before a judgment can be rightly entered upon the verdict the judge of the court must exercise a judicial function and approve or disapprove the verdict. It can not be doubted that frequently miscarriages of justice would be avoided by a more vigorous exercise of the trial court's discretion in granting new trials. And it is doubtful if a weightier responsibility rests upon the judge of the district court than the proper exercise of this part of his judicial functions. At every session we affirm judgments which do not accord with our views of justice as presented by the printed record, but solely because we are obliged to assume that the trial judge, in refusing to grant a new trial, has added to the verdict of the jury the weight of his approval, after a full opportunity to see and hear the witnesses, which this court can not have." (p. 266.)

But here there is nothing to show that the trial court's misgivings as to the sufficiency of the evidence to fasten the crime on defendant continued after the verdict was reached. (*Railroad Co. v. Matthews,* 58 Kan. 447, syl. ¶ 4, 49 Pac. 602; *Sovereign Camp v. Theibaud,* 65 Kan. 332, 337, 69 Pac. 348.)

There is no error in the record, and the judgment is affirmed.

MASON, J. (concurring specially): I regard the degree of certainty required for an approval by the trial judge of a verdict of guilty as somewhat overstated in the fourth paragraph of the syllabus.