96

GEORGE W. ATKINSON, *Appellee,* v. L. D. WIARD and EMMA WIARD, doing business as LAKEWOOD PARK, *Appellants.*

(109 P. 2d 160)

Opinion filed January 25, 1941.

*Louis R. Gates,* of Kansas City, *Inghram D. Hook* and *Harry Thomas,* both of Kansas City, Mo., for the appellants.

*Max L. Frederick,* of Leavenworth, *J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action for personal injuries. Judgment was for plaintiff. Defendants appeal.

A decision on the main point raised by defendants requires a discussion of what happened at a former trial. The petition alleged that plaintiff was injured while riding in a merry-go-round operated by defendants; that this device was of a type where the passengers sit in seats constructed to resemble airplanes attached to steel poles, the other ends of which were attached to the top of another pole, and when the force was applied the whole device whirled and the centrifugal force caused the seats to rise a distance off the ground of from eight to ten feet and the occupants were supposed to get the impression of riding an airplane. The petition further alleged that while plaintiff was riding this device, and while the box in which he was seated was a considerable distance off the ground, by some means unknown to him the front end of the plane in which he was riding was caused to become loosened, the front end of the box fell, the foot of the plaintiff was caught and he was dragged on the ground during several revolutions while the machine was being brought to a stop; that his foot finally came loose and he fell to the ground and then parts of the machine bumped and hit him. The petition alleged that the plaintiff sustained severe injuries. The petition also alleged that on the occasion in question the machine was in charge of a young man, who, after the machine had been started in motion, left the seat of control and went to a ticket office, a distance of twenty or thirty feet.

The defendants first demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled. Defendants then filed their answer in which they alleged a general denial and that the proximate cause of the injuries of plaintiff was his negligence in that he knew, or should have known, that patrons riding the device should remain seated, and notwithstanding this, as the seat in which he was riding rose in the air he, in disregard of his own safety, stood up in his seat, and when he was told to sit down by the operator of the machine remained standing and threw his body from side to side, causing the airplane to sway, and the plaintiff lost his balance and fell from the airplane.

The reply was a general denial.

At the first trial there was evidence on many disputed points. Among these was the question of whether the hook by which the airplane was fastened to the rod was a safe device. The jury returned a verdict for the defendants. Just before the jury was discharged counsel was given permission to ask one of the jurors some questions and brought out that one of the jurors had taken some wire and cardboard and pliers into the jury room after the noon recess and had constructed a model of the machine in question to demonstrate that the hooks about which witnesses had testified were actually safe. Counsel for plaintiff then moved that the verdict be not received and the jury be discharged. After considerable further questioning of the jury and argument on the part of counsel the trial court decided to receive the verdict and to discharge the jury. During this discussion counsel for defendants brought out by questioning counsel for plaintiff that his attention had been called by plaintiff's wife to the fact that one of the jurors was taking something into the jury room after the noon recess.

A motion for new trial was filed on the ground of misconduct of a juror. The entire transcript of the proceedings at the time the verdict was returned was introduced at this hearing. In fact, there does not seem to have been much dispute about what happened. The trial court granted the plaintiff a new trial. The case came on for trial the second time and resulted in a verdict and judgment for plaintiff. Motions of the defendants for a new trial were overruled, hence this appeal. This appeal was taken before the time allowed for appealing from the order allowing the new trial had elapsed.

The first point argued by defendants is that in the first trial the

court erred in sustaining the motion of the plaintiff for a new trial. In this connection defendant points out that the attention of counsel for plaintiff was called to the fact that the juror was taking something with him to the jury room when the jury returned to consideration of the case about four hours and a half before the verdict was reached. It is argued that when counsel saw this and did not bring it to the attention of the trial court that the misconduct was waived and plaintiff could not urge that as grounds for a new trial. In the first place, defendants are not in position to raise the question of whether the court was correct in sustaining this motion for a new trial. When they went ahead and tried the case pursuant to the order allowing the new trial they acquiesced in the order allowing the new trial and cannot be heard to complain about the correctness of it. In *Harmon v. Jones*, 146 Kan. 205, 69 P. 2d 690, this court quoted the rule from 4 C. J. S. 396, as follows:

"A party who voluntarily acquiesces in, ratifies, or recognizes the validity of, a judgment, order, or decree against him, or otherwise takes a position which is inconsistent with the right to appeal therefrom, thereby impliedly waives, or is estopped to assert, his right to have such judgment, order, or decree reviewed by an appellate court; and this rule has been held to apply where the acquiescence or ratification was either partial or in toto." (p. 207.)

This case is analogous to *Robertson v. Christenson*, 90 Kan. 555, 135 Pac. 567. In that case the issues had been made up and a trial had resulted in a verdict in favor of the defendant. On motion of plaintiff a new trial was granted. The defendant then filed an amended and supplemental answer in which he alleged much new matter. On motion of the plaintiff this amended and supplemental answer was stricken from the files. The defendant appealed from this order. This court considered whether the defendant had a right to file the amended answer, but because it appeared that a second amended and supplemental answer had been filed and was on file when the appeal was being heard it was held that the appeal should be dismissed. This court said:

"It appears, however, that after this ruling a second supplemental and amended answer was filed by appellant, in which he alleged most of the facts set up in the stricken answer. That pleading stands unchallenged on the files and supersedes the one stricken out. By filing the last amended and supplemental answer any error in the ruling upon the first is deemed to be waived." (p. 556.)

See, also, *Miles v. Hamilton*, 106 Kan. 804, 189 Pac. 926.

Furthermore, if we should hold that the defendant had not ac-

quiesced in the order allowing the new trial we see nothing sufficient in this record to take this case out of the rule announced in *Claggett v. Phillips Petroleum Co.*, 146 Kan. 846, 73 P. 2d 1015. There this court said:

"The trial court considered all these matters and expressed itself as not being satisfied with the result of the trial. Under such circumstances this court will not review the action of the trial court in allowing a new trial . . ." (p. 847.)

We have examined the authorities cited and relied on by defendants to the effect that where a party learns about misconduct of a juror during a trial and does not bring it to the attention of the trial court until after the verdict is returned he cannot afterwards make that misconduct the grounds for a new trial. We hold that these cases are not in point here. What counsel learned was that the juror had a package. There was nothing about this in and of itself to constitute misconduct. Counsel was not bound to assume that the juror intended to make a model of the device in question in the jury room. What actually transpired in the jury room was clearly prejudicial to the plaintiff and constituted misconduct. The trial court considering all these elements and the surrounding facts and circumstances could not approve the verdict. It therefore became its duty to order a new trial. (See *Pugh v. City of Topeka*, 151 Kan. 327, 99 P. 2d 862, also *Posey v. Johnson*, 145 Kan. 742, 67 P. 2d 598.)

The next point argued by defendants is that their demurrer to the petition should have been sustained. The basis of this argument is that the petition does not state any specific acts of negligence on the part of defendants, and shows on its face that the causes of the injury were not such as were soley and exclusively within the knowledge of the defendants. This is hardly a correct statement of what the petition shows on its face. In the very nature of things one who operates an amusement device such as we have here possesses knowledge of the manner in which it is operated and the plan of its construction, which is not available to every person who pays for a ride on it. The petition stated a cause of action. (See *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599; also *Clarke v. Cardinal Stage Lines*, 139 Kan. 280, 31 P. 2d 1.)

The next point argued by defendants is that the court erred in giving an instruction with reference to the last clear chance. Ap-

parently the reason for the court giving this instruction was that even if it had been found that plaintiff was negligent there was testimony to the effect that the young man who was operating the machine had left his post of operation and was not there to stop the machine when plaintiff appeared to be in a place of danger. Under such circumstances we cannot see where the giving of this instruction was prejudicial to the rights of the defendants.

The next point argued by defendants is that the verdict was given under the influence of passion and prejudice. The basis for this argument is that the verdict was for $1,000, and damages in that amount were not established by the evidence. There was evidence of loss of time in the amount of $400, and of pain and suffering, and while no hospital or doctor bill was testified to, the absence of such proof is not sufficient to justify holding that a verdict was given as a result of passion and prejudice.

Defendants next argue that the verdict was in whole or in part contrary to the evidence. There was evidence that plaintiff was riding in the seat; that part of it became unhooked, caught his foot and dragged him around the circuit of the machine. This does not seem to have been disputed. Evidently the jury saw fit not to believe the testimony of the defendants as to the plaintiff's contributory negligence.

Defendants next argue that the court erred in refusing to strike out certain testimony and to give certain instructions with reference to this testimony. On behalf of the defendants a young man named Mueller testified. On his cross-examination counsel for plaintiff asked him about his nationality and when he came to this country, and brought out that he had been here a number of years and had not been naturalized. No objection was made at the time, but just as counsel finished that line of questioning counsel for the defendants moved to strike out the testimony because it was incompetent, irrelevant and immaterial and was prejudicial to defendants. Plaintiff took the position that the questions were asked to affect the credibility of the witness. After some colloquy the trial court denied the motion to strike out the testimony and offered to instruct the jury that such questions were asked for the sole purpose of enabling the jury to judge the credibility of the witness. There was an objection by the defendants to such an instruction and none was given. A trial court has wide discretion in allowing questions to be asked of a witness on cross-examination that go to affect his credibility.

We hold that the questions were proper for that purpose and there was no abuse of discretion on the part of the trial court.

Defendants also complain that the trial court erred in refusing to discharge the jury when counsel in his closing argument for the plaintiff referred to the fact that the witness Mueller was an unnaturalized German. This reference, however, was cured by an instruction given by the trial court.

The judgment of the trial court is affirmed.